## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:12-CR-37** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **KEVIN STALLINGS (1),** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Defendant Kevin Stallings, through appointed counsel, moves for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i). (Docs. 55, 57). Stallings asks the court to reduce his sentence to time served based on his medical condition and his concern that the COVID-19 virus[1] may reach the Beckley Federal Correctional Institution ("FCI Beckley") where he is currently incarcerated. The government opposes compassion release. For the reasons that follow, we will deny Stallings' motion.

## I.     Factual Background & Procedural History

In February 2012, a grand jury returned a one-count indictment charging Stallings with possession with intent to distribute heroin and crack cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Doc. 1). Stallings pled guilty pursuant to a written plea agreement one month later. (See Docs. 20, 28).

---

[1] The COVID-19 virus is also known as "severe acute respiratory syndrome coronavirus 2" and "SARS-CoV-2." *Naming the coronavirus disease (COVID-19) and the virus that causes it*, WORLD HEALTH ORGANIZATION, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it. We refer to the virus herein as "the COVID-19 virus" and to the disease it causes as "COVID-19."

The presentence report detailed the offense conduct as involving a series of seizures, controlled buys, and arrests of Stallings over the course of several months. (See PSR ¶¶ 4-9). The presentence report also found that Stallings was a career offender based on several controlled-substance convictions in Pennsylvania state court. (Id. ¶¶ 20, 25, 30, 31). This designation subjected Stallings to an offense level of 29 and a criminal history category of VI and produced a Guidelines range of 151 to 188 months' imprisonment. (See id. ¶¶ 20, 34, 64). At sentencing on October 11, 2012, the court adopted the presentence report in full and sentenced Stallings to 151 months' imprisonment. (See Doc. 35). Stallings is currently housed at FCI Beckley, with a projected release date of October 11, 2022. See *Find an Inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (search for BOP Register Number "70437-067") (last visited July 2, 2020).[2]

Stallings filed a *pro se* motion for compassionate release on April 28, 2020. (Doc. 55).[3] That same day, we appointed the Federal Public Defender to determine whether Stallings may be eligible for such relief and, if so, to file any appropriate motion or briefing on his behalf. (Doc. 56). On May 1, Stallings wrote the warden at FCI Beckley and asked the warden to consider seeking compassionate release on his behalf. (See Doc. 58 at 2; Doc. 64 at 6 & n.4; see also Doc. 66-2). The warden

---

[2] Appointed counsel identifies Stallings anticipated release date as February 27, 2024. (See Doc. 58 at 1). That date is inconsistent with the date reported on the BOP's Inmate Locator website and confirmed by the government. (See Doc. 64 at 4). For purposes of this motion, we assume the October 11, 2022 date is correct.

[3] The court received a duplicate *pro se* motion one week later, on May 4, 2020. (See Doc. 57). We refer to Stallings' filings as a singular "motion" herein.

denied that request on May 6.  (See Doc. 64 at 6; see also Doc. 66-3).  Appointed

counsel filed a brief in support of Stallings' *pro se* motion on June 23, (Doc. 58), and

we promptly implemented an expedited briefing schedule, (Doc. 59).  Stallings'

motion is now fully briefed and ripe for review.  (See Docs. 58, 64, 68).

## II.   <u>Discussion</u>

Stallings asks the court to reduce his sentence to time served pursuant to

18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act of 2018, § 603(b), Pub.

L. No. 115-391, 132 Stat. 5194, 5239.  Section 3582(c)(1)(A)(i) allows the sentencing

court to reduce a term of imprisonment if the court finds, after consideration of the

Section 3553(a) factors, that "extraordinary and compelling reasons warrant such a

reduction" and "such a reduction is consistent with applicable policy statements

issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).

Both the defendant and the Director of the Bureau of Prisons ("BOP") can

move for compassionate release under Section 3582(c)(1)(A).  See id. § 3582(c)(1)(A).

But before a defendant can move the court directly, he must either "fully exhaust[]

all administrative rights to appeal a failure of the [BOP] to bring a motion on [his]

behalf" or wait for 30 days to lapse from the warden's receipt of a request that the

BOP file such a motion.  Id.  The warden denied Stallings' request to bring a motion

on his behalf within the 30-day period, and we have no indication that this denial

has been fully exhausted.  (See generally Doc. 58 at 2; Doc. 64 at 6 & n.4; Docs. 66-2,

66-3).  Nevertheless, the government takes the position that Stallings has satisfied

the minimum statutory exhaustion requirements.[4] (Doc. 64 at 13-14 & n.6). We therefore turn to the merits of Stallings' motion.

### A.    Extraordinary and Compelling Reasons

Stallings contends that his medical condition and resulting vulnerability to serious complications from COVID-19 establish extraordinary and compelling reasons to grant compassionate release. Stallings has Type 2 diabetes for which he is prescribed medication. (See Doc. 58 at 1, 4; see generally Docs. 61, 66). He asserts that his medical condition places him "at high risk for severe illness or death from COVID-19," that this risk is amplified in the prison setting, and that immediate release is the only way to guard against this risk and protect Stallings' health. (See Doc. 58 at 1-2, 6).

Congress delegated responsibility for defining "extraordinary and compelling reasons" for compassionate release to the United States Sentencing Commission. See 28 U.S.C. § 994(t). In Application Note 1 to Section 1B1.13 of the United States Sentencing Guidelines, the Commission identifies criteria for

---

[4] We note our disagreement with the government's legal conclusion that Stallings has satisfied the minimum statutory exhaustion requirements. We have previously held that, should the warden respond to a request to bring a motion for compassionate release on a prisoner's behalf within the 30-day timeframe provided by 18 U.S.C. § 3582(c)(1)(A)—thus not allowing 30 days to "lapse" without action—the prisoner "must fully exhaust the warden's denial within the BOP before the court can entertain his motion." See United States v. Petrossi, No. 1:17-CR-192, Doc. 133 at 2 & n.1 (M.D. Pa. Apr. 28, 2020) (collecting cases). Nonetheless, the government may waive the defense of statutory exhaustion by explicitly conceding it, even if that concession is based on "a flawed legal conclusion." See Sharrieff v. Cathel, 574 F.3d 225, 229 (3d Cir. 2009). In light of the government's explicit concession on exhaustion, (see Doc. 64 at 13-14 & n.6), we conclude that the government has waived exhaustion in Stallings' case.

determining eligibility for a sentence reduction.[5]  <u>See</u> U.S.S.G. § 1B1.13 cmt. n.1

(U.S. Sᴇɴᴛᴇɴᴄɪɴɢ Cᴏᴍᴍ'ɴ 2018).  Eligible circumstances include terminal illness

as well as "a serious physical or medical condition" or "deteriorating physical or

mental health because of the aging process" if the impairment "substantially

diminishes" the ability to provide self-care within a correctional facility and is

one from which the defendant "is not expected to recover."  <u>Id.</u> at cmt. n.1(A)(i),

(A)(ii)(I), (A)(ii)(III).  A defendant may also be eligible for an age-based reduction if

he is 65 or older, is experiencing "serious deterioration in physical or mental health

because of the aging process," and has served the lesser of 10 years or 75 percent of

his term of imprisonment.  <u>Id.</u> at cmt. n.1(B).  The Application Note closes with a

catchall, authorizing a reduction when the Director of the BOP identifies in a

particular case "an extraordinary or compelling reason other than, or in

combination with," the above.  <u>Id.</u> at cmt. n.1(D).

    The BOP has also developed internal criteria for addressing prisoner

requests for compassionate release.  Of the many considerations identified in the

BOP's policy statement, the only criteria potentially applicable to Stallings are

those concerning prisoners with a "debilitated medical condition."  <u>See</u> Fᴇᴅ.

Bᴜʀᴇᴀᴜ ᴏꜰ Pʀɪsᴏɴs, Pʀᴏɢʀᴀᴍ Sᴛᴀᴛᴇᴍᴇɴᴛ 5050.50: Cᴏᴍᴘᴀssɪᴏɴᴀᴛᴇ Rᴇʟᴇᴀsᴇ/

---

[5] We recognize that this policy statement has not been amended since passage of the First Step Act.  <u>See</u> <u>United States v. Kelly</u>, No. 3:13-CR-59, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (quoting <u>United States v. Perdigao</u>, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020)).  We agree with those courts to observe that Section 1B1.13 still "provides helpful guidance" even if it is no longer controlling.  <u>Id.</u> (quoting <u>United States v. Beck</u>, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019)).

REDUCTION IN SENTENCE: PROCEDURES FOR IMPLEMENTATION OF 18 U.S.C. §§ 3582 AND 4205(G) at 5, https://www.bop.gov/policy/progstat/5050_050_EN.pdf (Jan. 17, 2019).  The statement provides that compassionate release should be considered for prisoners "who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover."  Id.  Specifically, the BOP will consider compassionate release if a prisoner is "[c]ompletely disabled, meaning the [prisoner] cannot carry on any self-care and is totally confined to a bed or chair; or [c]apable of only limited self-care and is confined to a bed or chair more than 50% of waking hours."  Id.

Of course, neither the Sentencing Commission nor the BOP contemplated a deadly global pandemic when crafting these criteria.  Fortunately, the Third Circuit Court of Appeals had an early opportunity to provide guidance to district courts facing an inrush of compassionate release motions.  In United States v. Raia, 954 F.3d 594 (3d Cir. 2020), issued on April 2, 2020, the court observed that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison . . . cannot independently justify compassionate release, especially considering BOP's statutory role and its extensive and professional efforts to curtail the virus's spread."  United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).[6]  Over

---

[6] The Third Circuit in Raia held that motions under Section 3582(c)(1)(A) cannot be brought directly in the court of appeals and that the defendant's failure to exhaust administrative remedies would render remand futile.  See Raia, 954 F.3d at 596-97.  Anything the court said about the merits of the motion, after its threshold jurisdictional determination, is arguably *dicta*.  We are nonetheless persuaded by and agree with the court's observations as to the availability of compassionate release during the COVID-19 pandemic.

the past few months, district courts in both the pretrial and civil detention contexts likewise have opined that a generalized fear of the virus reaching a given institution is not a proper basis for release.  See Ndir v. Doll, No. 1:20-CV-705, ___ F. Supp. 3d ___, 2020 WL 2306761, at *5 (M.D. Pa. May 8, 2020) (Conner, C.J.) (collecting cases in civil immigration detainee context); D.M. v. Barr, No. 20-4031, 2020 WL 1969893, at *5 (D.N.J. Apr. 24, 2020) (same); United States v. Anderson, No. 1:19-CR-239, 2020 WL 1953612, at *4, 5 (M.D. Pa. Apr. 23, 2020) (same in pretrial detention context).  In other words, something more than a generalized concern regarding COVID-19 is required.

Stallings asserts that his medical condition supplies the requisite "something more."  The Centers for Disease Control and Prevention ("CDC") recently updated their guidance concerning who is at unique risk for severe illness from COVID-19, and that guidance does implicate Stallings' diabetes diagnosis.  See *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov /need-extra-precautions/groups-at-higher-risk.html (last reviewed June 25, 2020). Specifically, the guidance states that people with Type 2 diabetes "are at increased risk" for severe illness.  Id.  But Raia suggests that this increased risk, absent any likelihood of direct exposure to the virus, is not enough.  Francis Raia was 68 years old and had Type 2 diabetes and heart issues, both of which appeared on the CDC's increased-risk list.  See Raia, 954 F.3d at 596.  The Third Circuit acknowledged "the risks that COVID-19 poses in the federal prison system, *particularly for inmates like*

*Raia*," but nonetheless concluded that the "possibility" of the virus reaching his institution could not justify compassionate release. Id. at 597 (emphasis added).

Stallings' counsel suggests that things have changed. Counsel asserts that there has been an "explosion of COVID-19 cases in prisons across the country" and that 87 prisoners have died after contracting the disease in BOP custody. (Doc. 58 at 4). Tragically, counsel is correct—BOP statistics establish that several federal prisons have experienced outbreaks, and 91 prisoner deaths have been recorded to date. See *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/ coronavirus/ (select "Full breakdown and additional details") (last updated July 2, 2020, 3:00 p.m.). But nationwide figures are not representative of circumstances at individual prisons. As of this writing, no prisoner has tested positive for the COVID-19 virus at FCI Beckley. See id. And this is not for want of testing: 68 of 1476 prisoners at FCI Beckley have been tested for the virus. See id. (select "Learn more about the data and view individual facility stats"); *Population Statistics*, FED. BUREAU OF PRISONS, https://www.bop.gov/mobile/about/population_statistics.jsp (last visited July 2, 2020). We thus have no objective basis to find that Stallings is at imminent risk of being exposed to or contracting the COVID-19 virus.

Moreover, the BOP has implemented extensive efforts to prevent future outbreaks. It has suspended most visitation, implemented screening measures for staff and prisoners, and limited contractor visits to essential services. See *BOP Implementing Modified Operations*, FED. BUREAU OF PRISONS, https://www.bop.gov /coronavirus/covid19_status.jsp (last visited July 2, 2020). Prisoner movement between facilities has been "suspended with limited exceptions." Id. Movement

within facilities is restricted as well, with exceptions for mental health and medical treatment; certain programs and services; and access to commissary, laundry, showers, and telephones.  See id.  The BOP has also reduced its overall prison population by ramping up exercise of its authority under 18 U.S.C. § 3624(c)(2)— recently expanded by the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020)—to release certain vulnerable prisoners to home confinement.  See *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/.  The BOP reports that it has increased use of home confinement by 164%, releasing an additional 4,680 prisoners in the past three months.  Id. (last updated July 2, 2020, 3:00 p.m.).

There is also no reason to believe that the BOP cannot adequately treat Stallings' medical condition.  The medical records reflect that prison medical staff are diligent about routinely ordering and reviewing lab work and adjusting Stallings' diabetes medication as needed.  (See generally Doc. 66).  Stallings' acute medical issues—for example, complaints of constipation, frequent urination, and shoulder and knee pain—have been promptly addressed and treated.  (See, e.g., id. at 1, 8, 16, 21, 60).  A hernia was diagnosed and surgically repaired in November 2014, and counsel does not suggest that there are ongoing complications from this surgery or that it was unsuccessful.  (See id. at 4, 67).  There is simply no support for the intimation that the BOP is not equipped to treat Stallings.

The information available to the court establishes that the BOP is appropriately managing Stallings' chronic and acute medical conditions, that there presently is not a strong likelihood that he will be exposed to the COVID-19 virus at

FCI Beckley, and that the BOP is working hard to prevent such exposure from happening.  On these facts, we cannot conclude that the possibility that the COVID-19 virus *might* reach FCI Beckley—whether on its own or in combination with Stallings' heightened susceptibility to severe illness from COVID-19—is an "extraordinary and compelling" reason for release.

### B.    Section 3553(a) Factors

Even if we were to agree that extraordinary and compelling circumstances exist, our analysis must still be informed by the Section 3553(a) factors.[7]  See 18 U.S.C. § 3582(c)(1)(A).  Accounting for good time, Stallings still has more than 27 months remaining on his 151-month sentence.  His crime of conviction was serious. He has a significant and lengthy criminal record—one which led to his current career-offender status—and has a history of violating parole.  (See PSR ¶¶ 21-31). Although we commend Stallings' rehabilitative efforts while in prison, (see Doc. 58-2 at 1), we note that he has also been disciplined twice by prison staff—for violating visiting regulations in 2017 and for possessing an unauthorized item and conducting

---

[7] The Section 3553(a) factors are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner"; (3) "the kinds of sentences available"; (4) the kinds of sentence and sentencing range recommended by the United States Sentencing Guidelines; (5) pertinent policy statements issued by the United States Sentencing Commission; (6) "the need to avoid unwarranted sentencing disparities" among similarly situated defendants; and (7) the need for restitution.  18 U.S.C. § 3553(a).

a gambling pool in 2015, (see Doc. 66-1).  On balance, the Section 3553(a) factors

support leaving Stallings' existing sentence intact.

**III.   <u>Conclusion</u>**

We are not unsympathetic to Stallings' concern—or to any prisoner's

concern—that the COVID-19 virus may reach the institution where he is housed.

But that concern does not alone supply an "extraordinary and compelling" reason

for a sentence reduction that would have the effect of reducing Stallings' prison

term by more than two years.  Nor does it counterbalance the aggravating Section

3553(a) factors identified above.

For all of these reasons, the court will deny Stallings' motion for

compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

Mindful of the rapidly evolving nature of the COVID-19 pandemic and the potential

for hotspot outbreaks, our denial will be without prejudice to Stallings' ability to

refile the motion if, for example, the COVID-19 virus is detected at FCI Beckley.

An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania


Dated:     July 2, 2020